609 So.2d 1028 (1992)
Gerald W. McKENZIE, Plaintiff-Appellant,
v.
WEBSTER PARISH SCHOOL BOARD, Defendant-Appellee.
No. 24266-CA.
Court of Appeal of Louisiana, Second Circuit.
December 2, 1992.
*1029 Jones & Smith Law Offices by Benjamin Jones, Monroe, for plaintiff-appellant.
James M. Bullers, Dist. Atty., L. Charles Minifield, Asst. Dist. Atty., for defendant-appellee.
Before SEXTON, VICTORY and STEWART, JJ.
VICTORY, Judge.
Plaintiff, Gerald W. McKenzie, appeals a summary judgment in favor of defendant, Webster Parish School Board (School Board), in plaintiff's action for alleged wrongful termination from employment as a teacher in the Webster Parish school system. McKenzie argues that his termination was not in compliance with either the relevant statutes or the School Board's own policies. Finding that genuine issues of material fact exist, we reverse.

FACTS
McKenzie was hired by the School Board in August 1985 and worked as a probationary teacher under a series of one-year contracts until May 1988, a period of less than three calendar years. He taught at Sarepta High School and also served in a coaching position. Throughout this period, he was subjected to numerous observations and evaluations by the high school principal, Mr. Fulton Jones, as well as other school officials. These evaluations were generally favorable except for observations of weakness in classroom control.
On June 6, 1988, McKenzie received a letter from the personnel director, Ralph Rentz, and superintendent, Jerry Lott, informing him that they would not renew his teaching contract. The letter stated that the School Board felt it could not renew his contract after three years of trying to help him improve his classroom management technique. He was informed that he was entitled to a hearing, but if one was not desired, a recommendation would be made to the School Board that his contract not be renewed.
In a letter dated June 20, 1988, to the superintendent, the principal stated that he did not request the renewal of McKenzie's contract because it was his understanding that McKenzie's ratings on the observations *1030 and evaluations for the past three years had not been up to Webster Parish standards. The principal pointed out that other than the classroom control problem, McKenzie had good character, was very cooperative, and a hard worker.
McKenzie received a follow-up letter on July 5, 1988 from the superintendent stating that based upon the recommendations of the principal, the personnel director, and Dr. Ray Burnham, secondary supervisor of the School Board, he would recommend to the School Board that McKenzie's contract for 1988-1989 not be renewed. This decision was based upon observations made by the principal, the secondary supervisor, and another evaluator that McKenzie was deficient in classroom management and that his control and management techniques did not meet acceptable standards. The superintendent stated that because he believed effective teaching could not take place in an environment that was not positively controlled, managed and organized by the teacher and because McKenzie had not done this satisfactorily according to his supervisors, the superintendent would support their recommendation. In a hearing on July 25, 1988, the School Board reviewed McKenzie's evaluations and elected not to renew his contract.
On February 6, 1989, McKenzie instituted this action claiming that the School Board, in violation of the teacher tenure and accountability statutes as well as its own policy relating to employee separations, had fired him from his employment as a teacher. McKenzie contended that the School Board's actions in terminating him were arbitrary and capricious and that other teachers similarly situated with lower evaluation scores were allowed to continue in their employment. McKenzie asserted that his evaluations were above average and that the School Board devised a scheme to fire him in order to make a coaching position available for the relative of a parish elected official who was hired over two other more qualified applicants.
In response to McKenzie's suit, the School Board filed a motion for summary judgment alleging there were no genuine issues as to material fact. In the motion, it noted that McKenzie had been employed by the School Board for a period of two years and ten months and thus was not a tenured teacher whose dismissal was governed by LSA-R.S. 17:443, but was controlled by LSA-R.S. 17:442 regulating non-renewal of non-tenured teachers. McKenzie was given notice by various correspondence that his contract would not be renewed and these letters were presented to the School Board. According to defendant, the letters listed three specific reasons, all related to classroom management, for the decision not to renew the contract and although it was not mandatory, the School Board afforded McKenzie a hearing.
After reviewing the materials submitted, the trial court granted the summary judgment. In its written opinion, the trial court noted that since McKenzie had not been employed by the School Board for three calendar years, he had not become a tenured teacher. Thus, the School Board was not required to follow the provisions for removing a tenured teacher as set forth in LSA-R.S. 17:443, and McKenzie could be discharged or dismissed pursuant to LSA-R.S. 17:442. The court found that the facts demonstrated the School Board sent McKenzie three letters that his contract would not be renewed and these letters contained valid, specific reasons for the nonrenewal. The trial court found that the School Board clearly satisfied the statutory requirements in its decision not to renew McKenzie's contract and that the decision was not arbitrary and capricious. Finally, the court held that the teacher accountability law, LSA-R.S. 17:391.5, did not apply to nontenured teachers and thus was inapplicable to the instant matter.

DISCUSSION
A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966.
*1031 The mover for summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact, is to be resolved against the granting of the motion as it is not a substitute for, nor can it take the place of, a trial on the merits. If the evidence presented is subject to conflicting interpretations or reasonable men might differ as to its significance, summary judgment is not proper. Only when reasonable minds must inevitably concur is a summary judgment warranted and any doubts should be resolved in favor of a trial on the merits. Moreover, a summary judgment is rarely appropriate for a determination based upon subjective facts such as intent, motive, malice, knowledge or good faith. Penalber v. Blount, 550 So.2d 577 (La.1989); Liem v. Austin Power, Inc., 569 So.2d 601 (La.App. 2d Cir.1990); Yocum v. City of Minden, 566 So.2d 1082 (La.App. 2d Cir.1990); Marsh v. Reserve Life Insurance Company, 516 So.2d 1311 (La.App. 2d Cir.1987). The likelihood that a party will be unable to prove his allegations at trial does not constitute a basis for rendering summary judgment. Barbour v. Pit Stop Imports, Inc., 507 So.2d 14 (La.App. 2d Cir.1987).
On appeal, McKenzie does not complain of the trial court's holding that the provisions of LSA-R.S. 17:443 were inapplicable. Thus, McKenzie's termination is governed by LSA-R.S. 17:442, which provides in pertinent part:
Each teacher shall serve a probationary term of three years to be reckoned from the date of his first appointment in the parish or city in which the teacher is serving his probation. During the probationary term the parish or city school board ... may dismiss or discharge any probationary teacher upon the written recommendation of the parish or city superintendent of schools ... accompanied by valid reasons therefor.
Any teacher found unsatisfactory by the parish or city school board ... at the expiration of the said probationary term, shall be notified in writing by the board that he has been discharged or dismissed; in the absence of such notification, such probationary teacher shall automatically become a regular and permanent teacher in the employ of the School Board of the parish or city ... in which he has served his three-year probationary term ...
This statute simply requires the board to notify the non-tenured teacher/employee in writing that he has been discharged or dismissed. There is no requirement in the statute for detailed notice to the probationary teacher of the superintendent's reasons for recommending dismissal, nor is there a requirement that such a teacher be given a hearing or an opportunity to rebut the charges. While valid reasons must accompany the written recommendation of the superintendent to the board and they must actually exist, there is no requirement that these reasons be in any particular form. Probationary teachers do not have a constitutionally protected liberty or property interest in the renewal of their teaching contracts which entitle them to procedural due process and their discharge does not involve substantive due process. Thus, a teacher who does not enjoy tenure in his position may be discharged by the school board without notice or a hearing so long as valid reasons for his discharge have been expressed in writing by the superintendent. Booker v. Richland Parish School Board, 393 So.2d 785 (La.App. 2d Cir.1981); Tate v. Livingston Parish School Board, 391 So.2d 1240 (La.App. 1st Cir.1980); Hayward v. Rapides Parish School Board, 374 So.2d 1281 (La.App. 3d Cir.), writ denied, 376 So.2d 1267 (La.1979); Foreman v. Vermilion Parish School Board, 353 So.2d 471 (La. App. 3d Cir.1977), writ denied, 355 So.2d 257 (La.1978).
Although the statute does not provide for judicial review of the discharge of a probationary teacher, such review is available to assure that the school board did not abuse its discretion. The jurisprudence also indicates that "valid reasons" for discharge must exist. See Dean v. Tensas Parish School Board, 505 So.2d 908, 912 (La.App. 2d Cir.), writ denied 508 So.2d 826 (La.1987); Hayward v. Rapides *1032 Parish School Board, supra. In determining whether there were valid reasons for discharge the role of the reviewing court is to determine whether the great discretion of the school board was abused. Where there is a rational basis for the school board's discretionary determination, supported by substantial evidence, the courts cannot and should not substitute their own judgment. Myres v. Orleans Parish School Board, 423 So.2d 1303 (La.App. 4th Cir.1982), writ denied 430 So.2d 657 (La. 1983). The term "valid reasons" has been equated to "sound and sufficient reasons." Ford v. Caldwell Parish School Board, 541 So.2d 955 (La.App. 2d Cir.1989).
McKenzie argues on appeal that genuine issues of material fact exist regarding whether his termination was arbitrary and capricious in that other teachers similarly situated were treated differently and allowed to continue to teach.
The answers to interrogatories and depositions establish that non-renewal of plaintiff's contract was in accordance with LSA-R.S. 17:442. As the exhibits indicate, plaintiff was given adequate notice by letters dated June 6, 1988 and July 5, 1988 from the School Board personnel director and superintendent that his contract would not be renewed based on his deficiency in classroom management techniques. These letters not only enumerated reasons for nonrenewal, but also notified plaintiff that he was entitled to a hearing, even though the School Board was not required by statute to offer a probationary teacher such an opportunity. On June 20, 1988, the Sarepta High School principal sent a letter to the superintendent which gave specific reasons for not renewing plaintiff's contract, including poor classroom order and control which were reflected on plaintiff's past evaluations.
A review of McKenzie's evaluations reveal that he was consistently criticized for his lack of classroom control and his difficulty in utilizing classroom management techniques. Although the evaluations did contain many positive comments, the area of classroom management was always designated as needing improvement.
The evidence presented by the School Board in support of its motion for summary judgment reinforces the reasons for dismissal given by the superintendent. Since these reasons constitute a rational basis for the board's actions, the board did not clearly abuse its discretion. We find it irrelevant that other non-tenured teachers at other schools, who were evaluated by other supervisors based upon individual classroom performance, received renewed contracts.
However, McKenzie further contends that the accountability statute, LSA-R.S. 17:391.1, et seq., is applicable and that the School Board failed to comply with its own accountability policies adopted pursuant to that statute. The trial court declined to address plaintiff's contention, holding that the accountability statute was inapplicable to probationary teachers. We disagree.
LSA-R.S. 17:391.5(C) requires that each certified employee[1] be evaluated and his performance assessed on a continuing basis, "at least once each school year for probationary personnel, and at least every third year for personnel with permanent status." It further provides:
In the event an employee is considered not performing his duties in a satisfactory manner then the employing authority shall notify the employee in writing of such determination and describe such nonperformance. The employing authority shall thereafter confer with the employee making specific recommendations as to areas of considered unsatisfactory performance of the employee and to assist him to correct such considered deficiencies within a prescribed period of time. Assistance may include but not be limited to in-service training programs or such other appropriate programs.
Pursuant to this law, the School Board adopted a professional assistance program to provide more than one opportunity to *1033 improve the skills of an employee who had been evaluated as less than satisfactory. Only after multi-opportunities had been prescribed and reevaluation had occurred would continued unsatisfactory performance result in recommendation for dismissal. The professional assistance program was to be planned by an evaluator and/or observers and recorded on a professional assistance program schedule form. Activities would be prescribed, a time period established and data for reevaluation determined. The schedule was to be signed and dated by the evaluator and the teacher both at a conference when the schedule would be presented to the teacher and again at a post-evaluation conference when assistance had been offered.
The deposition testimony of the personnel director and the superintendent clearly indicates that these procedures had not been specifically followed in McKenzie's evaluation and dismissal. Although Charles Lott testified that notations were made on other documentation, he admitted that the accountability policies of the School Board were not deliberately followed in this case. All the witnesses admitted that while the accountability policy had not been deliberately complied with, they believed that the classroom management problem had been properly addressed. Ralph Rentz testified that he was under the impression written documentation was unnecessary, since the principal and other supervisors had worked with McKenzie and made suggestions on classroom management techniques.
Since LSA-R.S. 17:391.5(C) unequivocally applies to both probationary and permanent employees, we find the trial court erred in holding otherwise. It is unclear from the evidence before this court whether the evaluation forms and verbal communications between McKenzie and his supervisors adequately fulfill the requirements of LSA-R.S. 17:391.5 and the School Board's own accountability policies. Because the evidence presented in support of the motion for summary judgment does not clearly reveal compliance with the accountability policies applicable to this case, we find it inappropriate to dispose of this case in a summary manner. Accordingly, we hold that genuine issues of material fact exist regarding whether McKenzie's evaluation and dismissal was proper under LSA-R.S. 17:391.5 and the School Board's own policies.

DECREE
For these reasons, the summary judgment in favor of defendant, Webster Parish School Board, is hereby reversed and remanded for further proceedings consistent with this opinion. Costs are assessed against defendant.
REVERSED AND REMANDED.
NOTES
[1] Even though plaintiff is classified as a probationary teacher, he is required to hold a teaching certificate issued by the state board of education. LSA-R.S. 17:413.